IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

MONIQUE BERRY,                    §
                                  §
                    Plaintiff,    §
                                  § Civil Action No. 3:05-CV-0014-D
VS.                               §
                                  §
CHOON WOO LEE a/k/a JAE WOO       §
LEE, et al.,                      §
                                  §
                    Defendants.   §

MEMORANDUM OPINION
AND ORDER

        This lawsuit arises from an employment dispute and is based in
principal part on alleged sexual assaults committed against the
plaintiff by her employer during a business trip to Asia.
Defendants move to dismiss on various grounds, one of which
presents a somewhat difficult issue of personal jurisdiction
arising from the complex relationships among related corporate
entities.  For the reasons that follow, the court denies the Fed.
R. Civ. P. 12(b)(2) and 12(b)(5) motions to dismiss for lack of
personal jurisdiction and insufficiency of service of process,
grants in part and denies in part the Rule 12(b)(6) motion to
dismiss for failure to state a claim, and denies the Rule 12(f)
motion to strike portions of plaintiff's second amended complaint
("complaint").

I

        Plaintiff Monique Berry ("Berry") sues defendants Choon Woo
Lee a/k/a Jae Woo Lee ("Lee"), Sae Hee Hwang a/k/a Sae Hee Lee

("Hwang"), James Shin ("Shin"), Bao Sheng Corporation ("BSC"), Cangzhou Baosheng Processing Co., Ltd. ("CBPC"),[1] Bao-Sheng, Inc. ("BSI"), and Bao-Sheng USA Inc. ("BSUSA"), alleging that they are liable under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, for hostile work environment sexual harassment and retaliation, and under state law for assault, battery, and attempted rape, negligent failure to warn, negligent supervision, intentional infliction of emotional distress, fraud, tortious interference with contractual relations, and conspiracy. Berry's lawsuit arises from her decision to leave Cosmoslab, Inc. ("Cosmoslab"), her former employer, and her employment in the private label cosmetics business with entities that she alleges were operated as a single, integrated business enterprise composed of BSC, CBPC, BSI, and BSUSA, to which she refers collectively as "Bao Sheng." *See* P. 2d Am. Compl. ¶ 4. She maintains that she was hired by defendant Lee and worked on behalf of the collective Bao Sheng entities, having been hired by BSI, sold products produced by CBPC, and sold cosmetic products for BSC, BSI, and BSUSA. A principal ground for her lawsuit is the allegation that Lee

---

[1]Although Berry at one point in her complaint identifies this defendant by the name "Chang Zhou Bao Sheng Processing Co., Ltd.," *see* P. 2d Am. Compl. at 1, and spells the defendant's name "Cang Zhou Bao Sheng Processing Co., Ltd." in her brief in opposition to defendants' motion to dismiss, *see, e.g.,* P. Br. 1, she also spells the name similarly to defendants' spelling, *see* P. 2d Am. Compl. ¶ 2(f) (spelling name "Changzhou Baosheng Processing Co., Ltd." as opposed to "Cangzhou Baosheng Processing Co., Ltd.").

sexually assaulted her several times during a November 2003 business trip to China and Korea.  This court's subject matter jurisdiction is premised both on the presence of a federal question and on diversity of citizenship.

Defendants move on several grounds to dismiss.[2]  CBPC seeks dismissal under Rule 12(b)(2) for lack of personal jurisdiction and under Rule 12(b)(5) for insufficient service of process.

BSI, BSUSA, BSC, and CBPC move for partial dismissal under Rule 12(b)(1), contending the court lacks subject matter jurisdiction over Berry's Title VII claims for sexual harassment and retaliation because, separately or collectively, they do not qualify as Title VII "employers" since they employ fewer than 15 employees.  BSI asserts that it has never operated with more than 14 employees.  BSUSA maintains that it has not conducted any substantive business or employed a single employee.  BSC posits that it is a Korean company that has no United States employees.  CBPC contends that, although it has nearly 900 employees who are Chinese or Korean citizens, it operates exclusively within the People's Republic of China ("China"), has never employed a United States citizen, and has not employed a foreign national inside the United States.

All defendants move on several grounds for partial dismissal

---

[2]Defendants' request for oral argument is denied.  *See* N.D. Tex. Civ. R. 7.1(g) ("Unless otherwise directed by the presiding judge, oral argument on a motion will not be held.").

under Rule 12(b)(6) for failure to state a claim on which relief may be granted.  They also move under Rule 12(f) to strike ¶ 96 of Berry's complaint,[3] contending that it violates the Federal Rules of Evidence and Texas Disciplinary Rules of Professional Conduct. Berry opposes the motions.[4]

II

The court addresses as a preliminary matter defendants' June 24, 2005 objection and motion to strike portions of Berry's appendixes in support of her amended response.

First, defendants contest materials that they contend constitute stolen confidential information from a BSI laptop provided to Berry as part of her employment.  Whether the materials were stolen is questionable.  The parties entered a written agreement that permitted Berry to copy the hard drive of the computer and to "have access to the information contained" in it for purposes of "investigating and evaluating the" lawsuit

---

[3]They also move to strike ¶ 43 of her original and first amended complaints.  Because these pleadings have been superseded by the filing of the second amended complaint, *see U.S. Bank N.A. v. Safeguard Insurance Co.*, 2006 WL 16890, at *1 n.1 (N.D. Tex. Jan. 4, 2006) (Fitzwater, J.), the court denies this ground of defendants' motion as moot.

[4]Berry filed on May 16, 2005 a motion for additional time to complete discovery.  Based on the proceedings that have transpired since she filed the motion, the court concludes that the motion is now moot and therefore denies it without prejudice.

- 4 -

allegations.  P. July 18, 2005 App. 1-3.[5]

Regardless of how Berry obtained the information, defendants have failed to identify any Rule of Evidence or evidentiary principle that supports striking the materials.  *See* Fed. R. Evid. 103(a)(1) (providing, *inter alia*, that motions to strike must state specific ground for objection if not apparent from context).  They cite two inapposite cases that relate to whether Title VII would protect her from engaging in such behavior.  *See* Ds. Objs. & Mot. to Strike 1-2 (citing *O'Day v. McDonnell Douglas Helicopter Co.*, 79 F.3d 756, 761 (9th Cir. 1996); *Jefferies v. Harris County Cmty. Action Ass'n*, 615 F.2d 1025, 1036 (5th Cir. 1980)).  Because the evidentiary basis on which the objection is grounded is not sufficiently presented, the court overrules the objection and denies the motion to strike as to the allegedly stolen laptop materials.  *See United States v. Polasek*, 162 F.3d 878, 883 (5th Cir. 1998) ("A loosely formulated and imprecise objection will not preserve error.  Rather, a trial court judge must be fully apprised of the grounds of an objection.") (citation omitted).

Second, defendants move to strike Berry's declaration on the ground that it is based on subjective beliefs and conclusory statements.  Because the court has not relied on objectionable portions of Berry's declaration in deciding these motions, it

---

[5]Because in litigating these motions the parties have filed multiple appendixes, the court will refer to each appendix according to the party who filed it and the date it was filed.

- 5 -

overrules the objection and denies the motion to strike.

### III

CBPC moves to dismiss Berry's lawsuit under Rule 12(b)(2) for lack of personal jurisdiction and, subject to this motion, under Rule 12(b)(5) for insufficient service of process.

### A

This court has both diversity and federal question jurisdiction in this case.

> A federal district court sitting in diversity may exercise personal jurisdiction only to the extent permitted a state court under applicable state law. The state court or federal court sitting in diversity may assert jurisdiction if: (1) the state's long-arm statute applies, as interpreted by the state's courts; and (2) if due process is satisfied under the fourteenth amendment to the United States Constitution.

*Allred v. Moore & Peterson*, 117 F.3d 278, 281 (5th Cir. 1997) (citations and internal quotation marks omitted). When, as here, jurisdiction is based on the Texas long-arm statute, "[t]hese two steps collapse into one . . . because the Texas Supreme Court has established that the Texas long-arm statute extends to the limits of federal due process." *Ruston Gas Turbines, Inc. v. Donaldson Co.*, 9 F.3d 415, 418 (5th Cir. 1993) (footnotes omitted). Accordingly, the court need only consider whether exercising jurisdiction over CBPC would be consistent with the Due Process Clause of the Fourteenth Amendment. *See, e.g., Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 214 (5th Cir. 2000).

- 6 -

When jurisdiction is founded "upon a federal statute that is silent as to service of process, and a state long-arm statute is therefore utilized to serve an out-of-state defendant, [Rule 4] requires that the state's standard of amenability to jurisdiction apply." *DeMelo v. Toche Marine, Inc.*, 711 F.2d 1260, 1266 (5th Cir. 1983) (addressing former Rule 4(e)) (following *Burstein v. State Bar of Cal.*, 693 F.2d 511, 514 (5th Cir. 1982)). Title VII does not provide for nationwide service of process. *Goyette v. DCA Adver., Inc.*, 830 F. Supp. 737, 742 (S.D.N.Y. 1993). "[W]hen a plaintiff invokes federal question jurisdiction and serves process under a state long-arm statute, a federal court can assert jurisdiction only if the state court could have done so." *Petroleum Helicopters, Inc. v. Avco Corp.*, 804 F.2d 1367, 1371 (5th Cir. 1986).

Accordingly, the court's analysis of whether it has personal jurisdiction over CBPC is the same, regardless whether subject matter jurisdiction is based on a federal question or on diversity of citizenship. And as noted above, that issue reduces to the single question whether exercising personal jurisdiction would be consistent with due process.

> The Due Process Clause of the Fourteenth Amendment permits the exercise of personal jurisdiction over a nonresident defendant when (1) that defendant has purposefully availed himself of the benefits and protections of the forum state by establishing minimum contacts with the forum state; and (2) the exercise of jurisdiction over that defendant does not

> offend traditional notions of fair play and
> substantial justice.  To comport with due
> process, the defendant's conduct in connection
> with the forum state must be such that he
> should reasonably anticipate being haled into
> court in the forum state.

*Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999) (footnote

and internal quotation marks omitted).

A defendant's contacts with the forum may support either

specific or general jurisdiction over the defendant.  *Mink v. AAAA*

*Dev. LLC*, 190 F.3d 333, 336 (5th Cir. 1999).  "Specific

jurisdiction exists when the nonresident defendant's contacts with

the forum state arise from, or are directly related to, the cause

of action.  General jurisdiction exists when a defendant's contacts

with the forum state are unrelated to the cause of action but are

'continuous and systematic.'"  *Id.* (citations omitted).  For the

court properly to assert specific personal jurisdiction, CBPC must

have purposefully directed its activities at a Texas resident, and

the litigation must result from alleged injuries that arise out of

or relate to CBPC's activities directed at Texas.  *See Archer &*

*White, Inc. v. Tishler*, 2003 WL 22456806, at *2 (N.D. Tex. Oct. 23,

2003) (Fitzwater, J.).

> When a court rules on a motion to dismiss for
> lack of personal jurisdiction without holding
> an evidentiary hearing, it must accept as true
> the uncontroverted allegations in the
> complaint and resolve in favor of the
> plaintiff any factual conflicts posed by the
> affidavits.  Therefore, in a no-hearing
> situation, a plaintiff satisfies [her] burden
> by presenting a *prima facie* case for personal

- 8 -

jurisdiction.

*Latshaw*, 167 F.3d at 211 (footnote omitted). "This liberal standard, however, does not require the court to credit conclusory allegations, even if they remain uncontradicted." *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 2000 U.S. Dist. LEXIS 22714, at *7-*8 (N.D. Tex. Sept. 15, 2000) (Fitzwater, J.), *aff'd*, 253 F.3d 865, 869 (5th Cir. 2001) (per curiam) (affirming, *inter alia*, this conclusion).

B

The court's initial inquiry concerns CBPC's amenability to jurisdiction under Texas law. Berry appears to advance two grounds for maintaining jurisdiction over CBPC under the Texas long-arm statute. First, she points to evidence that, in 2002, CBPC, together with BSC, entered into four separate agreements in the United States with Anisa International Inc. ("Anisa") to sell CBPC's cosmetic brushes ("the Anisa Contracts"). She alleges that each contract was signed by Lee as President of CBPC and as President of BSC; that in February 2003 CBPC and BSC entered into a separation agreement with Anisa, also signed by Lee as President of CBPC and BSC, that terminated the Anisa Contracts; and that immediately after CBPC terminated the Anisa Contracts, Lee moved to North Texas and purchased a building in Lewisville, Texas, from which he directed and commanded CBPC's China factory via daily telephonic or email contacts with the factory and his brother, Jung

- 9 -

Woo Lee ("Jung"), who lives in China.  The court construes this allegation as an assertion that CBPC itself has sufficient direct contacts with Texas to warrant the assertion of personal jurisdiction.

Second, Berry maintains that personal jurisdiction exists over CBPC through the business of BSI, CBPC, BSC, BSUSA, and Lee in Texas.  To sustain jurisdiction under this theory, Berry must show that the Texas activities of those defendants would subject them to the reach of the Texas long-arm statute and that their activities may properly be imputed to CBPC.  None of the other defendants contests the exercise of personal jurisdiction, and the court therefore focuses on the relationship between CBPC and the other defendants.

1

Berry's first contention lacks merit.  The only evidence that arguably supports the contention that CBPC itself has sufficient contacts with Texas to support personal jurisdiction is the Anisa Contracts and the separation agreement.  The parties dispute whether CBPC is even a named party to the Anisa Contracts.  Even if the court assumes that CBPC is a party, Berry offers no evidence that the contracts were entered into in Texas, that Anisa is registered to do business in Texas, or that Anisa or the Anisa Contracts have any relation whatsoever to Texas.  Defendants proffer evidence that Anisa is incorporated in Tennessee with its

mailing address in Georgia. Ds. June 24, 2005 App. 7-8. Accordingly, Berry has failed to carry her burden of establishing a prima facie case that CBPC itself has sufficient contacts with Texas to support personal jurisdiction.

                                    2

The court now turns to Berry's principal contention: that the court has general jurisdiction over CBPC through the corporate defendants and Lee's doing business in Texas. She alleges three related theories of personal jurisdiction: BSC, CBPC, BSI, and BSUSA constitute a single business enterprise, CBPC is the alter ego of BSC, and CBPC is the alter ego of Lee. Although Berry presents these contentions separately, the evidence she proffers to support each is generally coextensive.

Defendants maintain that CPBC must be viewed as a distinct company that lacks minimum contacts with this forum. They contend that CPBC is incorporated under the laws of China; CPBC manufactures cosmetics products that are sold to customers (including BSC) in China and Korea; BSC sells the manufactured products of CBPC and other manufacturers outside China; one BSC customer is BSI, who markets CBPC's products to distributors in the United States and around the world; and CBPC has separate ownership from BSI and is operated separately from BSI, BSC, and BSUSA. Defendants also dispute that the single business enterprise theory can be used to establish personal jurisdiction. Principally, they

contend that, under Texas law, liability cannot be imposed on an entity based on the single business enterprise theory absent a showing of that entity's actual fraud.

The court begins by rejecting defendants' challenge to Berry's reliance on the single business enterprise theory. Berry is not relying on this theory to prove that CPBC is liable; she is doing so for the purpose of establishing that CBPC is amenable to suit in this forum. This distinction is recognized in Texas. *See El Puerto de Liverpool, S.A. de C.V. v. Servi Mundo Llantero S.A. de C.V.*, 82 S.W.3d 622, 634 (Tex. App. 2002, pet. dism'd w.o.j.) ("The analysis undertaken when determining whether separate corporate entities should be treated as one for jurisdictional purposes is different than that undertaken when determining whether separate corporate entities should be treated as one for liability purposes."). Moreover, Texas courts rely on the single business enterprise theory to assert jurisdiction. *See, e.g., Judson Atkinson Candies, Inc. v. Latini-Hohberger-Dhimantec*, 2005 WL 822911, at *2 (W.D. Tex. Apr. 6, 2005) ("Texas courts also apply the 'single business enterprise' theory as a basis for asserting personal jurisdiction over nonresident corporate defendants."). Accordingly, the court rejects defendants' contention.

The jurisprudence that informs the court's determination of whether the single business enterprise theory or alter ego

liability is applicable contains similar factors.[6]  Both lines of cases emphasize that the doctrines are equitable remedies and that "courts are concerned with reality and not form, with how the corporation operated and the individual defendant's relationship to that operation."  *DeWitt Truck Brokers, Inc. v. W. Ray Flemming Fruit Co.*, 540 F.2d 681, 685 (4th Cir. 1976) (addressing alter ego liability); *Nichols v. Pabtex, Inc.*, 151 F.Supp.2d 772, 782 (E.D. Tex. 2001) (addressing single business enterprise theory). Significantly, both determinations are highly fact-based and require consideration of the totality of the circumstances in which the instrumentalities function.  *See Bridas S.A.P.I.C. v. Gov't of Turkm.*, 345 F.3d 347, 359 (5th Cir. 2003), *cert. denied*, 541 U.S. 937 (2004).

Notably, the facts of this case are not like those of the more typical alter ego or single business enterprise entity scenario, where the issue is whether a parent corporation has exceeded the normal exercise of control inherent in ownership of the stock of the subsidiary.  Berry is attempting to assert personal jurisdiction over an allegedly unrelated company.  Although the standard doctrinal considerations will control this court's

_____

[6]*But see PHC-Minden, L.P. v. Kimberly-Clark Corp.*, ___ S.W. 3d ___, 2005 WL 1979102, at *4 (Tex. App. Aug. 17, 2005, pet. filed) (observing distinction that "'alter ego' theory generally involves proof of fraud, i.e., proof that corporation is organized and operated merely as tool or business conduit of another corporation," whereas "no proof of fraud is required" for single business enterprise theory).

evaluation of her prima facie case, the facts of this case do not fit neatly within either line of alter ego or single business enterprise case law.  Accordingly, the court will review Berry's evidence cumulatively to determine whether she has made a prima facie showing of personal jurisdiction.

3

In determining the application of the alter ego or single business enterprise theories, courts have outlined non-exhaustive lists of factors that differentiate corporations and that indicate commonality.  *See generally Hargrave v. Fibreboard Corp.*, 710 F.2d 1154, 1162-63 (5th Cir. 1983) (addressing alter ego factors); *El Puerto de Liverpool*, 82 S.W.3d at 637 (addressing single business enterprise factors in context of challenge to personal jurisdiction).  Factors indicating that the corporations are distinct entities include the following: daily operations of the corporations are separate; formal barriers are erected between management of the companies; those with whom the corporations come in contact are apprised of their separate identity; there are separate books and accounts; and there are separate tax returns.  Conversely, factors weighing in favor of fusing the corporations and/or individuals include the following: common business names, business departments, offices, directors or officers, employees, stock ownership, financing, accounting, and payment of wages by one corporation to another corporation's employees and the rendering of

- 14 -

services by employees of one corporation on behalf of another corporation.  No single factor is determinative, and the ultimate question is one of control.  *See Bridas*, 345 F.3d at 359.

4

The parties do not dispute that Lee is the controlling shareholder and President of BSI, BSUSA, and BSC.  This fact is insufficient of itself to establish single business enterprise status among these three corporate entities.  There is sufficient evidence, however, that BSI, BSUSA, and BSC, along with CBPC, constitute a single business enterprise for the court to exercise personal jurisdiction over CBPC.

The companies' brochures, business cards, and websites all refer to a single enterprise named "Bao Sheng Corporation," which manufactures and distributes cosmetic brushes.  The brochures indicate that Lee is the President of BSC, that the company was started by his father in 1952, and that it "wholly owns its manufacturing facilit[y]" in Tianjin, China.  P. May 25, 2005 App. 13, 15.  They provide that BSC has an office in Lewisville, Texas, one in Korea, and a factory in China.  Likewise, the BSC website indicates that Lee is the President, that it is a Korean corporation, and that it has a factory in China.  Indeed, the BSC website includes a map and pictures of the Chinese factory.  The business cards indicate a similar corporate structure.  The free samples of BSC cosmetic brushes handed out at trade shows list a

United States office located in Texas, a main Korean office, and a factory in China.  Finally, in a power point presentation prepared by Berry for purposes of BSC sales, the slides ask: "Where in the World is Bao Sheng?" *Id.* at 94.  And the response is: "Located in Tianjin, China."  *Id.*

These corporate materials are augmented by evidence that Lee owned and, most important, solely controlled BSC, CBPC, BSI, and BSUSA.  Although defendants contend that CBPC is owned by Lee's brother, Jung, a citizen of Korea who resides in China, and have adduced affidavits from Lee and Jung to support this premise, the court must resolve factual conflicts in the evidence in Berry's favor in determining whether she has established a prima facie case.  *Latshaw*, 167 F.3d at 211.  Berry proffers a pro forma balance sheet that describes Lee's finances, which Lee apparently prepared "to get it to people that [Lee] was trying to do business deals with."  *See* P. May 25, 2005 App. 32, 1946, 1988.  It indicates that Lee owns, *inter alia*, a company in Korea with sales in excess of $16 million and, *inter alia*, a "Factory in China (100% owned)," and bank accounts for "Bao Sheng Inc - USA" and "Bao Sheng LLC," totaling approximately $10 million.

Moreover, a response to a customer request for information about BSI states that "Lee is the owner of" BSI, BSC, and CBPC. *Id.* at 35.  And, in answer to a question about "the names and nature of any subsidiaries for which you will be quoting," the

response states: "None——all companies are owned by . . . Lee and you are working directly with the factory rather than through importers or brokers." *Id.* In responding to customer questions by email, on dozens of occasions Lee described the plant in China as "wholly-owned" by BSC. *See, e.g., id.* at 127-29. Gary Cole ("Cole"), Lee's former business partner and former Vice President of BSC, BSI, and BSUSA, testified that Lee was the "primary owner" of the China factory and that, with respect to the Bao Sheng entities generally, Lee is "the owner." *Id.* at 2011, 2103. Finally, Berry proffers the translation of a document entitled, "Certificate of Approval for Establishment of Enterprises with Foreign Investment in the People's Republic of China," which indicates that "Bao Sheng Brush Manufacturing Co., Ltd of Korea" invested $500,000 in China. P. Sep. 2, 2005 App. 1212. Indeed, Lee's principal marketing strategy appears to be that BSC can generate "the greatest value" by providing "factory direct" pricing and cutting out of the middleman. *See, e.g.*, P. May 25, 2005 App. 224, 244, 2012.

As to the control that Lee exercised over CBPC, Berry has adduced evidence that Lee set the prices for the products manufactured at CBPC. She points to an email sent by Lee in which he writes, "I have told Jung . . . that China price is to be $1.05/set." *Id.* at 169. There is evidence that Lee was involved in the day-to-day factory operations, including the purchase of new

machinery.  *Id.* at 261.  Cole testified that "what [Lee] wanted done, it was done in terms of whether it be Korea, whether it be China, whether be the United States."  *Id.* at 2011.  He averred that Lee "had the final [word] in all the companies."  *Id.* at 2012. Further, he stated that Lee talked to China "every single day" and "many times a day" and, most significant, that Lee could both change the prices set by the Chinese factory and direct production. *Id.* at 2010, 2070.  Cole testified that "the company itself doesn't draw a distinction between China, Korea and the United States." *Id.* at 2032.

Berry's burden of demonstrating a prima facie case of personal jurisdiction through alter ego and single business enterprise theories is "less stringent" than the standard she must meet at trial of proving alter ego or single business enterprise liability. *See Hargrave*, 710 F.2d at 1161.[7]  Viewing the evidence as a whole, the court concludes that Berry has made a prima facie showing that BSI, CBPC, BSUSA, and BSC are a single business enterprise. Therefore, service of process on Lee, as President of BSI, BSUSA, and BSC, was sufficient for purposes of serving CBPC.  *See generally* Rule 4(h)(1); *see also Blades v. Ill. Cent. R.R. Co.*, 2003 WL 1193662, at *2 (E.D. La. Mar. 12, 2003) ("Of course, where

_____

[7]If Berry makes a prima facie showing to establish personal jurisdiction, she must nevertheless prove personal jurisdiction at trial by a preponderance of evidence. *See Felch v. Transportes Lar-Mex SA de CV*, 92 F.3d 320, 326 (5th Cir. 1996); *DeMelo*, 711 F.2d at 1271 n.12.

the subsidiary is the . . . alter ego of the parent, service upon the subsidiary can be effective against the parent."). For the same reason, the court holds that CBPC, as a component of a single business enterprise, has sufficient minimum contacts with the state of Texas to support the exercise of general jurisdiction over it. *See, e.g., Ingenius Invs., Inc. v. Bombart*, 2006 U.S. Dist. LEXIS 2225, at *10-*14 (N.D. Tex. Jan. 20, 2006) (McBryde, J.) (concluding, *inter alia*, that exercise of personal jurisdiction over foreign individual defendant was proper where he was alter ego of all corporate defendants, including Texas corporation); *Judson Atkinson Candies*, 2005 WL 822911, at *4-*9 (holding exercise of personal jurisdiction proper where single business enterprise theory and alter ego doctrines applied to individual and corporate foreign defendants).

C

The court next determines whether exercising personal jurisdiction over CBPC would offend traditional notions of fair play and substantial justice.

> [O]nce minimum contacts are established, a defendant must present a compelling case that the presence of some consideration would render jurisdiction unreasonable. In fact, only in rare cases will the exercise of jurisdiction not comport with fair play and substantial justice when the nonresident defendant has purposefully established minimum contacts with the forum state.

*WRR Indus., Inc. v. Prologis*, 2006 WL 247894, at *4 (N.D. Tex. Feb.

- 19 -

2, 2006) (Lindsay, J.) (citations, quotation marks, and some brackets omitted). "[W]hen determining the fundamental fairness issue this court will normally examine (1) the defendant's burden; (2) the forum state's interests; (3) the plaintiff's interest in convenient and effective relief; (4) the judicial system's interest in efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive social policies." *Id.* (citing *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 113 (1987); *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980)).

CBPC contends that it is unreasonable and unjust to require CBPC to defend this suit in this district. It maintains that, according to the United States Department of State, China may view voluntary depositions and acquiring evidence through affidavits as violations of its judicial sovereignty, with potentially dire consequences. CBPC also posits that China has stated that American litigants can only obtain evidence in China through letters rogatory to the Chinese Bureau of International Judicial Assistance, and the State Department has concluded that this procedure has been largely unsuccessful in practice due to prolonged delays or noncompliance by Chinese authorities. It maintains that, to adduce evidence in its own defense, it must send employees to foreign countries to sign affidavits or attend depositions, at a cost that will quickly become unreasonably

burdensome, and with no guarantee that the witnesses will be allowed to leave China for this purpose. CBPC argues that the apparent impossibility of obtaining the evidence as part of an American judicial proceeding in China and the economic burden associated with obtaining information from Chinese witnesses makes it unreasonable and inconsistent with traditional notions of fair play and substantial justice to require CBPC to defend itself in this forum.

The last four factors favor exercising jurisdiction in this district, and CBPC does not appear to dispute this premise. Texas has a strong interest in protecting its citizens from the commissions of torts, particularly sexual assaults. Berry has a strong interest in obtaining convenient and effective relief in this forum, where her claims against all defendants can be adjudicated in a single tribunal. The efficient resolution of controversies favors this forum over China. To the extent the fifth factor applies and there is shared interest of the several states in furthering fundamental substantive social policies, Texas' interest is clearly paramount to China's.

The factor that CBPC appears to emphasize is the first, which considers the defendant's burden. The court will accept CBPC's assertions concerning the limitations that China imposes on discovery and evidentiary development associated with civil litigation. Berry does not contest them, and there is no reason to

doubt CBPC's contentions.  That said, CBPC has done little to show that it will be unduly burdened in this case.  It addresses generally the burdens faced by litigants who find it necessary to develop evidence from witnesses located in China, but it does little to nothing to show that any such witnesses are even necessary in this case.[8]  Based on the record developed so far, the primary witnesses appear to be Berry, the alleged victim, and Lee, the alleged aggressor, and other employees of the Bao Sheng entities who were part of the November 2003 trip to China and Korea.  These witnesses all appear to be capable of testifying in Texas, in court or by deposition.  It is therefore speculative at this juncture to presume that CBPC will be deprived at all of any relevant evidence, or of non-cumulative evidence, by reason of China's restrictions on civil litigants.

Moreover, having concluded that BSI, BSC, BSUSA, and CBPC operate as a single business enterprise for minimum contacts purposes, the court finds that it is not unreasonably burdensome to assert personal jurisdiction over CBPC, particularly considering that the court is exercising general jurisdiction, that Lee resides

_____

[8]Although the standards that apply to motions filed under 28 U.S.C. § 1404(a) do not control, the court notes that if CBPC were moving to transfer this case under § 1404(a), it would be required to "make a particularized showing regarding why transfer is necessary, including identification of key witnesses and the general content of their testimony." *Fowler v. Broussard*, 2001 WL 184237, at *6 (N.D. Tex. Jan. 22, 2001) (Fitzwater, J.) (citing *Young v. Armstrong World Indus., Inc.*, 601 F. Supp. 399, 401-02 (N.D. Tex. 1984) (Sanders, J.)).

in Texas, and that BSI and BSUSA are based here.

Having considered the five factors, the court finds that asserting personal jurisdiction over CBPC comports with due process and does not offend traditional notions of fair play and substantial justice. The court therefore denies CBPC's motion to dismiss for lack of personal jurisdiction.

IV

BSI, BSUSA, BSC, and CBPC next move for partial dismissal under Rule 12(b)(1), maintaining that the court lacks subject matter jurisdiction over Berry's Title VII claims.

A

Defendants contend they are not "employers" within the meaning of Title VII because, either as separate entities or collectively, as a single business enterprise, they do not have 15 employees. *See* 42 U.S.C. § 2000e(b) (defining "employer" as, *inter alia*, "a person . . . who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year"). At the time the parties filed their briefs, the minimum-employee requirement under Title VII was considered jurisdictional in the Fifth Circuit. *See, e.g., Johnson v. Crown Enters.*, 398 F.3d 339, 343 n.3 (5th Cir. 2005) (reiterating that failure to meet Title VII's employee count requirement deprives court of jurisdiction). The Supreme Court has just decided, however, that "the threshold number of employees for

application of Title VII is an element of a plaintiff's claim for relief, not a jurisdictional issue." *Arbaugh v. Y&H Corp.,* 546 U.S. ___, ___ S.Ct. ___, 2006 WL 397863, at *8 (Feb. 22, 2006). Accordingly, the court will decide BSI, BSUSA, BSC, and CBPC's Rule 12(b)(1) motion under the standards that apply to a Rule 12(b)(6) motion. *Compare Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995) (holding in other circumstances that conversion from Rule 12(b)(1) to Rule 12(b)(6) motion was proper).

B

In deciding a 12(b)(6) motion, the court construes the complaint in the light most favorable to Berry, accepts as true all well-pleaded factual allegations, and draws all reasonable inferences in her favor. *See, e.g., Lovick v. Ritemoney Ltd.*, 378 F.3d 433, 437 (5th Cir. 2004). "The motion to dismiss for failure to state a claim is viewed with disfavor and is rarely granted." *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982) (internal quotation marks omitted). "[D]ismissal of a claim on the basis of barebones pleadings is a precarious disposition with a high mortality rate." *Id.* (internal quotation marks omitted). "The court may dismiss a claim when it is clear that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999) (per curiam) (Rule 12(c) decision).

Although Berry does not specifically allege that BSI, BSUSA, BSC, or CBPC has 15 or more employees, she alleges that "Bao Sheng is an employer within the meaning of Title VII." P. 2d Am. Compl. 16. And, she alleges that BSI, BSUSA, BSC, and CBPC constitute "Bao Sheng." P. 2d Am. Compl. 4. The court accepts these allegations as true. Accordingly, the court cannot grant Rule 12(b)(6) relief because to do so it would be required to consider matters outside the pleadings. The court denies BSI, BSUSA, BSC, and CBPC's motion, without prejudice to their seeking relief by way of motion for summary judgment.

V

Defendants next move under Rule 12(b)(6) to dismiss Berry's state-law claims on six grounds,[9] contending she has failed to state claims on which relief may be granted.

A

Because grounds one and four contain similar contentions, the court will address them jointly. Defendants first contend that Berry has not alleged a claim against Hwang and Shin for failure to provide notice. They maintain that she has not pleaded any cause of action against Hwang and Shin that is recognized under Texas law, and they posit that, as individual corporate officers and employees, they "cannot be liable for an alleged failure to provide

_____

[9]Defendants designate these arguments under five grounds, but the first ground contains two separate grounds.

- 25 -

a safe workplace or to disclose workplace dangers." Ds. Br. 27.
Likewise, defendants contend in ground four that neither Shin nor
Hwang can be held liable for negligent supervision because neither
had a duty to supervise Lee. They maintain that, under Texas law,
that duty is limited only to the corporate employer. In response,
Berry points to a single case that holds, *inter alia*, that "[a]n
employer has a duty to adequately hire, train and supervise
employees." P. Br. 24 (quoting *Mackey v. U.P. Enters., Inc.*, 935
S.W.2d 446, 458 (Tex. App. 1996, no pet.)).

Under Texas law, "[a] corporate . . . agent can be liable to
others, including other company employees, for his or her own
negligence. However, individual liability arises *only* when the . 
. . agent owes an independent duty of reasonable care to the
injured party *apart from* the employer's duty." *Leitch v. Hornsby*,
935 S.W.2d 114, 117 (Tex. 1996)(emphasis added). To explain what
it meant by an "independent duty," the *Leitch* court used the
example of a corporate agent who negligently causes an automobile
accident while in the course and scope of his employment. *Id*. The
agent would be individually liable for his own negligent conduct
because one has an "independent duty" to operate an automobile in
a non-negligent manner. *Id*. The court then noted that corporate
agents could of course be personally liable for actions within the
employment context if they were the alter egos of the corporation.
*Id*.

Here, Berry alleges that Shin and Hwang were "at all times relevant herein . . . acting on behalf of Bao Sheng [BSI, BSUSA, BSC, or CBPC]." P. 2d Am. Compl. 6.   Nowhere in the complaint does she allege that Shin or Hwang was the alter ego of any of the corporations.   Berry has failed to allege that Shin or Hwang had an independent duty to give notice to her, to supervise Lee, or to provide a safe workplace, apart from that person's duties arising in the course and scope of his or her employment.   *See Leitch*, 935 S.W.2d at 117-18 (holding that corporate agents cannot be held individually liable for failing to provide proper safety equipment and safe work environment to subordinate employee).   Accordingly, the court grants Shin and Hwang's motion to dismiss with respect to Berry's claims for negligent failure to warn and negligent supervision.[10]

B

Defendants maintain in ground two that the Occupational Safety and Health Act of 1970 ("OSHA"), 29 U.S.C. §§ 651-78, preempts Berry's state-law claims.   Ds. Br. 27.   Specifically, they reason that "Because Plaintiff's claims of 'tortious failure to provide a safe working environment' and tortious failure 'to disclose information' are preempted by [OSHA] and its Regulations, and because [OSHA] does not provide a private right of action,

_____

[10]This dismissal is without prejudice to her seeking leave to amend to assert such causes of action, provided she has factual and legal bases to do so.

Plaintiff's allegations fail to state a cause of action." *Id.* at 30.   Berry counters that defendants "cite no case" that OSHA preempts her claims.   P. Br. 24.

Defendants fail to identify where the complaint alleges "tortious failure to provide a safe working environment" or tortious failure "to disclose information."   Because, despite diligent efforts, the court has been unable to locate these references, it assumes that defendants' argument is directed at the negligent-failure-to-warn claim.   *See* P. 2d Am. Compl. 19 (stating that "Bao Sheng, Shin and [Hwang] breached their duty to Plaintiff by *failing [t]o advise and warn* Plaintiff about [Lee] and of such danger") (emphasis added).   That claim relates only to the corporate entities——BSI, BSUSA, BSC, and CBPC——because the court has dismissed the action against Shin and Hwang, *see supra* § V(A), and it is not asserted against Lee.

"Federal preemption is an affirmative defense."   *Kiefer v. Cont'l Airlines, Inc.*, 882 S.W.2d 496, 497 (Tex. App. 1994) (citing *Gorman v. Life Ins. Co. of N. Am.*, 811 S.W.2d 542, 546 (Tex. 1991)), *aff'd*, 920 S.W.2d 274 (Tex. 1996).   "In the usual case, th[e] court is unable to grant dismissal under Rule 12(b)(6) based on an affirmative defense because it rarely appears on the face of the complaint." *Simon v. Telsco Indus. Employee Benefit Plan*, 2002 WL 628656, at *1 (N.D. Tex. Apr. 17, 2002) (Fitzwater, J.); 5B Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure*

§ 1357, at 708-10 (3d ed. 2004). Berry's negligent-failure-to-warn claim alleges that BSI, BSUSA, BSC, and CBPC knew but failed to disclose that Lee was an alcoholic and a womanizer, and failed to immediately extricate her from the situation where Lee was assaulting her. *See* P. 2d Am. Compl. 19. It is not clear from Berry's complaint that her state-law claims are preempted by OSHA. Moreover, "the area of tort law traditionally has been occupied by the states; therefore, unless Congress states a clear and manifest purpose for OSHA to supersede state tort law, OSHA is not preemptive." *Land v. Dow Chem. Co.*, 2000 WL 729401, at *4 (Tex. App. June 8, 2000, no pet.) (unpublished opinion). Because the affirmative defense is not sufficiently apparent from the face of the complaint, and because, as a general proposition, OSHA does not preempt state-law tort claims, the court declines to dismiss Berry's state-law claims based on the complaint alone.

C

Defendants posit in ground three that Berry has failed to state a claim for fraud because the injury she suffered does not arise from her reliance on the misrepresentations alleged. They contend that her alleged damages do not arise from leaving Cosmoslab and going to work for Bao Sheng. The court disagrees. Berry sufficiently alleges for Rule 12(b)(6) purposes that defendants made representations about, *inter alia*, the BSI, BSUSA, BSC, and CBPC corporate entities. *See* P. 2d Am. Compl. 21. She

avers that the representations were material and false and that she relied on them in deciding to leave her employment at Cosmoslab. *Id.* Finally, she asserts that "[a]s a proximate result of such fraud," she "suffered actual and consequential damages." *Id.* Accordingly, the court concludes that it does not "appear[ ] beyond doubt that there is no set of facts on which [Berry] is entitled to relief." *E.g., Chiras v. Miller*, 432 F.3d 606, 611 (5th Cir. 2005). Dismissal at the Rule 12(b)(6) stage is unwarranted.

D

Defendants urge in ground five that Berry has failed to state a cause of action against Lee and Shin for tortious interference with her employment contract with Bao Sheng. They maintain that Lee and Shin cannot be held liable for tortious interference with a contract between Berry and any of the corporate entities, e.g., BSI, as her employer because Lee and Shin were also employees. And as employees, they cannot qualify as a third party or stranger to the Berry employment contract who is legally capable of interfering with it. Defendants argue that for either to interfere, Lee or Shin must have willfully and intentionally performed an act in furtherance of his personal interest, at the corporation's expense.

Under Texas law, "[b]ecause a corporate officer's acts on the corporation's behalf usually are deemed corporate acts, a plaintiff must show that the agent acted solely in his own interests." *Powell Indus., Inc. v. Allen*, 985 S.W.2d 455, 457 (Tex. 1998) (per

curiam); *see also Wodka v. Integrated P'ships, Inc.*, 2001 WL 1029460, at *2 (N.D. Tex. Aug. 24, 2001) (Fitzwater, J.). Berry must allege that Lee and Shin acted willfully and intentionally to serve his personal interest at the corporation's expense. *Powell Indus.*, 985 S.W.2d at 457. "A corporate officer's mixed motives——to benefit both himself and the corporation——are insufficient to establish liability." *Id.*

Berry does not quarrel with the legal premise of defendants' argument. Instead, she contends that an "[o]fficer[ ] of a corporation can, in fact, be liable for tortious interference with contract . . . [if he] act[s] to his own benefit and to the detriment of the employer." P. Br. 24. The complaint fails, however, to allege that Lee or Shin acted solely for his own benefit or that he conducted himself contrary to the corporations' interests. Moreover, as discussed *supra* at § V(A), Berry specifically alleges that Shin and Lee were "at all times relevant herein . . . acting on behalf of Bao Sheng [BSI, BSUSA, BSC, or CBPC]." P. 2d Am. Compl. 6. This allegation itself forecloses Berry from succeeding on the tortious interference with contractual relations claim against Lee or Shin. Accordingly, the court grants Lee's and Shin's motion to dismiss this claim.[11]

---

[11]This dismissal is without prejudice to her seeking leave to amend to assert such a cause of action, provided she has factual and legal bases to do so.

E

Finally, defendants contend in ground six that Berry has failed to state a cause of action for conspiracy because she does not plead an underlying cause of action. In Texas, civil conspiracy is not an independent cause of action. Rather, it is a derivative tort by which Berry can hold one conspiracy participant liable for the torts committed by another participant if the torts were committed in furtherance of an unlawful conspiracy. *See Tilton v. Marshall*, 925 S.W.2d 672, 681 (Tex. 1996); *Berry v. Golden Light Coffee Co.*, 160 Tex. 128, 327 S.W.2d 436, 438 (1959).

The complaint alleges that the conspiracy consists of a plan by Lee and Shin "to cover up the assaults and attempted rape" of Berry, "to force [Berry] to quit her employment," and "to discredit" her. P. 2d Am. Compl. 22. In her brief, she makes the conclusory assertion that she has stated an action for conspiracy, and she appears to describe her claim as one "for conspiracy to violate the Texas Commission on Human Rights Act." P. Br. 25. The court has found no indication in her 100-paragraph complaint, and certainly not in her conspiracy claim, that she is relying for any purpose on an alleged violation of the Texas Commission on Human Rights Act. The court thus rejects this basis for her conspiracy claim and instead reviews the allegations laid out in her complaint.

As a derivative tort, Berry must "plead and prove another

substantive tort upon which to base a civil conspiracy claim." *Grizzle v. Tex. Commerce Bank, N.A.*, 38 S.W.3d 265, 285 (Tex. App. 2001) *rev'd in part on other grounds*, 96 S.W.3d 240 (Tex. 2002). The torts she alleges are assault, battery, and attempted rape, negligent failure to warn, negligent supervision, intentional infliction of emotional distress, fraud, and tortious interference with contractual relations. Because conspiracy requires specific intent, neither negligence claim can serve as the basis for her conspiracy claim. *See Juhl v. Airington*, 936 S.W.2d 640, 644 (Tex. 1996) ("[O]ne cannot agree or conspire to be negligent.").

The complaint does not allege that Shin conspired with Lee to assault, batter, or attempt to rape Berry. Her intentional infliction of emotional distress claim concerns Lee's alleged assault and attempted rape. The fraud allegations relate to misrepresentations that induced her to join the BSC-related entities. The tortious interference with contract claim relates to her employment contract. None of the alleged torts remotely pertains to her theory that Lee and Shin conspired to cover up the assaults and attempted rape, to force her to quit her employment, or to discredit her. It appears that she is attempting to assert a stand-alone conspiracy claim that is devoid of an underlying cause of action. The court thus concludes that she has failed to allege a predicate tort on which to base her civil conspiracy

claim, and it dismisses the claim against all defendants.[12]

                                    VI

     Finally, defendants move under Rule 12(f) to strike ¶ 96 of
the complaint.  Paragraph 96, a component of her conspiracy claim,
alleges the following: "After the attempts of [Lee] and Shin failed
to force [Berry] to quit, as part of this conspiracy, [Lee] and
Shin had Marco Golding approach [Berry] and offer [her] $300,000.00
to keep silent and leave her employment at Bao Sheng.  Plaintiff
refused."  P. 2d Am. Compl. ¶ 96.  Defendants contend that this
allegation constitutes an "offer[ ] of compromise or settlement"
that is inadmissible under Fed. R. Evid. 408.  Ds. Mot. 7.  Rule
408 prohibits "[e]vidence of (1) furnishing or offering or
promising to furnish . . . a valuable consideration in compromising
or attempting to compromise a claim which was disputed as to either
validity or amount, is not admissible to prove liability."  Berry
has not responded to this argument.[13]

_____

     [12]This dismissal is without prejudice to her seeking leave to
amend to assert such cause of action, provided she has factual and
legal bases to do so.

     [13]Defendants also urge that inclusion of ¶ 96 violates Texas
Disciplinary Rule of Professional Conduct 3.04(c)(2), which
provides "[a] lawyer shall not . . . in representing a client
before a tribunal . . . state or allude to any matter that the
lawyer does not reasonably believe is relevant to such proceeding
or that will not be supported by admissible evidence."  *See* Tex. R.
Disciplinary Prof'l Conduct 3.04(c)(2), *reprinted in* Tex. Gov't
Code Ann. tit. 2, subtit. G app. A (Vernon 2005) (Tex. State Bar R.
art. X, § 9).  Because the evidence may in fact be relevant and
admissible, the court rejects this argument.

                               - 34 -

Rule 12(f) provides that the court may strike from any pleading any immaterial, impertinent, or scandalous matters. The decision whether to grant defendants' motion to strike is within the discretion of the court. *Jacobs v. Tapscott*, 2004 WL 2921806, at *2 (N.D. Tex. Dec. 16, 2004) (Fitzwater, J.). "Both because striking a portion of a pleading is a drastic remedy, and because it often is sought by the movant as a dilatory tactic, motions under Rule 12(f) are viewed with disfavor and are infrequently granted." *Id.* (internal quotation marks omitted). Courts have, however, used Rule 12(f) to strike allegations from complaints that detail settlement negotiations within the ambit of Rule 408. *See, e.g., Phila.'s Church of Our Savior v. Concord Twp.*, 2004 WL 1824356, at *2 (E.D. Pa. July 27, 2004) ("While Rule 408 does not apply to pleadings directly, . . . allegations in a complaint may be stricken, under Rule 12(f), as violative of these policies."); *United States ex rel. Alsaker v. CentraCare Health Sys., Inc.*, 2002 WL 1285089, at *2 (D. Minn. June 5, 2002) ("Under Rule 408, evidence of conduct or statements made in compromise negotiations is inadmissible to prove liability. Although this is a rule of evidence, courts have routinely granted motions to strike allegations in pleadings that fall within the scope of Rule 408." (citation omitted)); *Kelly v. L.L. Cool J.*, 145 F.R.D. 32, 40 (S.D.N.Y. 1992) (granting defendant's motion to strike portions of complaint that referenced settlement discussions under Rule 408 as

- 35 -

immaterial and potentially prejudicial); *Agnew v. Aydin Corp.*, 1988 WL 92872, *4 (E.D. Pa. Sept. 6, 1988) (striking parts of complaint pursuant to Rule 408 because they referenced settlement negotiations for purpose of showing liability). The question is whether ¶ 96 contains statements that violate Rule 408 as "statements made in compromise negotiations."

The court is unable to determine on the existing record whether the statements actually constitute settlement negotiations. *See generally* 23 Charles A. Wright & Kenneth W. Graham, Jr., *Federal Practice & Procedure* § 5307, at 221-37 (1st ed. 1980 & Supp. 2005) (discussing whether statements were made "in compromise negotiations" under Rule 408). There are no facts alleged regarding precisely when the statements were made in relation to the status of actual or anticipated litigation between Berry and the defendants.[14]   Moreover, courts have held that evidence otherwise excludable under Rule 408 is admissible for purposes other than to prove liability.   *See, e.g., Reichenbach v. Smith*, 528 F.2d 1072, 1075 (5th Cir. 1976) ("Rule 408 codifies a trend in case law that permits cross-examination concerning a settlement for the purpose of impeachment."). The Rule excepts settlement agreement evidence used to prove the bias or prejudice of a witness. Without more, it is unclear whether the allegation of

---

[14]It is conceivable that the statements were made for any number of non-settlement related purposes, e.g., to prevent Berry from going to the police to report the alleged assault.

- 36 -

¶ 96 is offered for an inadmissible purpose.  In sum, the issue presents an evidentiary question that cannot be resolved in the context of this Rule 12(f) motion.

Given the disfavored status of motions to strike, uncertainties that exist regarding the admissibility of Lee's and Golding's statements, and the absence of any allegations by defendants that they are prejudiced by the recounting of these alleged statements in the complaint, the court declines to strike ¶ 96.  Rather, defendants may move to exclude evidence of the statements, if appropriate, at a later stage of the litigation. *See Stewart v. Wachowski*, 2004 U.S. Dist. LEXIS 26607, at *19-*20 (C.D. Cal. Sept. 28, 2004) (declining to grant Rule 12(f) motion where court was not without doubt that Rule 408 applied); *Yankelevitz v. Cornell Univ.*, 1997 WL 115651, at *5 (S.D.N.Y. Mar. 14, 1997) (holding amendment to complaint not improper under Rule 12(f) because "it [was] not clear that the amendments could properly be stricken as relating to settlement negotiations, especially given the general disfavor with which motions to strike are generally viewed"); *Eskofot A/S v. E.I. Du Pont De Nemours & Co.*, 872 F. Supp. 81, 94 (S.D.N.Y. 1995) (declining to strike allegations, despite strong reservations regarding plaintiff's contention that allegations did not relate to settlement negotiations, because it was unclear whether discussions referenced constituted negotiations).

                           *       *       *

        For the reasons explained above, the court denies CBPC's March

15, 2005 Rule 12(b)(1) motion to dismiss for lack of personal

jurisdiction and insufficient service of process; denies BSI,

BSUSA, BSC, and CBPC's March 15, 2005 Rule 12(b)(6) motion to

dismiss the Title VII claims; grants in part and denies in part

defendants' March 15, 2005 Rule 12(b)(6) motion to dismiss the

state-law claims; and denies defendants' March 15, 2005 Rule 12(f)

motion to strike ¶ 96 of the complaint.  The court denies in part

on the merits and denies in part as moot defendants' June 24, 2005

objection and motion to strike plaintiff's appendixes, and it

denies as moot Berry's May 16, 2005 motion for additional time to

complete discovery.

        **SO ORDERED.**

        March 8, 2006.


                                    _____
                                    SIDNEY A. FITZWATER
                                    UNITED STATES DISTRICT JUDGE


                                 - 38 -